UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE JOHNSON,

    Plaintiff,

v.

DAVITA, INC. and RENAL TREATMENT
CENTERS-ILLINOIS, INC.,

    Defendants.
                                         /

Case No. 2:17-cv-11591

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [22]</u>**

On May 17, 2017, Plaintiff Michelle Johnson filed a complaint alleging that her former employer, Defendants DaVITA, Inc. and Renal Treatment Centers-Illinois, Inc. (collectively "DaVita"), fired her in violation of Title VII, 42 U.S.C. § 2000e, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). On March 19, 2018, Defendant filed a motion for summary judgment. The Court reviewed the briefs and finds that a hearing is unnecessary. For the reasons below, the Court will grant Defendant's motion for summary judgment.

**BACKGROUND**

DaVita employed Plaintiff Michelle Johnson as an RN at its Southfield, MI dialysis center for two years. On July 22, 2016, DaVita terminated Johnson for job abandonment. ECF 22-4, PgID 224.

Plaintiff's absences began after an incident on July 4, 2016. Johnson called Patient[1] and cancelled the patient's dialysis appointment because Patient was two hours

---

[1] The Court omits the patient's name for privacy reasons.

1

late and the dialyzer had expired. Shortly after the phone call, Patient arrived at DaVita, but Johnson refused to treat Patient because of the dialyzer's expiration. Patient became upset, called Johnson a racist, used obscenities, and knocked against Johnson's shin with her motorized wheelchair ("Incident"). ECF 22-4, PgID 179–80. The physical contact "grazed [Johnson's] shin and left [a] mark" on her leg. *Id.* at 213; *see also* ECF 22-8, PgID 273. Patient called the police alleging that Johnson assaulted her. Johnson eventually filed her own police complaint alleging that Patient assaulted *her*. Johnson also contacted DaVita's personnel hotline and discussed the Incident with Doreen McInnes-Martin, DaVita's People Services Manager. The next day, July 5, Johnson worked at the facility.

The Incident, however, prompted Johnson to ask DaVita to discontinue treatment of Patient. David Zagacki, DaVita's Facility Administrator, and Jeffrey Daniel, DaVita's Assistant Facility Administrator, sought a compromise by offering either (1) to move Patient to the other side of the building, (2) to suggest Patient visit a different facility, or (3) to adjust Johnson's schedule for days during which Patient would not receive dialysis treatment. Both parties agreed to a compromise. As DaVita understood the compromise, Johnson would work the Tuesday, Thursday, Saturday shift after the completion of her then-current schedule on July 24, 2016. Johnson expressed her hope for that compromise as well, stating "I have told [Daniel] for the next schedule to put me on [the other shift]." ECF 22-4, PgID 221. She hoped the placement would be temporary. *Id.* DaVita's communication with Johnson—and sometimes its lack of communication—caused her to suffer apparent confusion about her work schedule. Despite the confusion, however, Johnson acknowledged that she was scheduled to work several days when Patient would be in the building, but she "had to miss [work]" those days. *Id.*

2

On July 18, 2016, Lakretia Hartfield, DaVita's Teammate Relations Manager, mailed Johnson a return-to-work letter with clear instructions to attend work on July 20. ECF 22-4, PgID 220. Johnson—confused about the instruction because of the scheduling compromise—texted and called Daniel requesting clarification. Daniel did not return Johnson's communications. And Johnson did not attend work.

After Johnson's unexcused absences,[2] DaVita terminated Johnson's employment for job abandonment. Johnson contests the action because "DaVita basically discriminated against me because no one had my back. No one . . . said [Patient] was wrong to me. No one said anything." ECF 22-4, PgID 203. She further "alleges that she was terminated as a result of Patient making a completely false assertion of racism against her." ECF 24, PgID 322. In sum, according to Johnson, DaVita terminated her after failing to "conduct [an] adequate inquiry into Johnson's concerns, and instead considered race in their approach to these unique facts" by apparently accepting Patient's assertions, placating Patient, and firing Johnson. *Id.* at 325, 323.

Notably, DaVita never otherwise disciplined or reprimanded Johnson for the Incident. ECF 22-4, PgID 185. Further, Zagacki challenged Patient's characterization of Johnson as a racist by saying that Johnson "care[d] for 90 percent African American patients and she does a good job and she's passionate about what she does." ECF 22-3, PgID 150. Both Zagacki and Daniel testified that they did not believe Johnson was a racist. *Id.*; ECF 22-6, PgID 251–52.

Johnson claims that DaVita terminated her because she is white and brings her claims for reverse race discrimination under Title VII and the ELCRA.

---

[2] Johnson used one day of paid-time off during one of her absences.

3

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

Neither party relies upon direct evidence of discrimination. The Court will therefore review Plaintiff's Title VII employment-discrimination claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] First, a plaintiff must demonstrate a prima facie case of discrimination. Once plaintiff makes that

---

[3] Michigan courts have adopted the burden-shifting mechanism for ELCRA claims. *Lind v. City of Battle Creek*, 470 Mich. 230, 238 (2004).

showing, the Defendant must offer a legitimate, non-discriminatory reason for the adverse action. Then, the plaintiff must show that Defendant's proffered reason is pretext for discrimination.

The Sixth Circuit modified the prima facie case for reverse-race discrimination cases. *Thompson v. City of Lansing*, 410 F. App'x 922, 932 (6th Cir. 2011). Under that adapted approach, a plaintiff must demonstrate: "(1) background circumstances supporting the inference that plaintiff's employer was the unusual employer who discriminated against non-minority employees, (2) that plaintiff was discharged . . . (3) that plaintiff was qualified for the position, and (4) that plaintiff was treated disparately from similarly situated minority employees." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 726 (6th Cir. 2016) (citation omitted).[4] Here, the parties contest only the first and fourth elements. *Compare* ECF 22 *with* ECF 24. And the Court need only address the fourth prong.

Plaintiff fails to meet the fourth element of the prima facie showing: differential treatment of similarly situated minority employees. Plaintiff states:

> The employer has not produced evidence of any situation that is remotely similar to the fact pattern here, and Plaintiff's claims should not be dismissed *just because she cannot establish that others were dismissed under similar circumstances* where no similar circumstances exist. Johnson has produced sufficient evidence that is strongly suggestive of race bias under the facts presented here.

ECF 24, PgID 322–23 (emphasis added).

Plaintiff's response contains several errors. First, the burden of making a prima facie showing rests on Plaintiff, not Defendant. Second, whether Johnson produced

---

[4] Michigan law has not adopted the modified framework for the first prong of the prima facie case.

sufficient evidence of race bias goes to the first element of background circumstances, not the fourth element of differential treatment. A strong showing for one element does not obviate the other required elements of the prima facie showing.

Finally, Plaintiff, by her own admission, fails to show differential treatment of similarly situated minority employees. Plaintiff alleges that "she was terminated as a result of Patient making a completely false assertion of racism against her." ECF 24, PgID 322. She further maintains that the circumstances surrounding her "termination were entirely unique, and therefore not capable of analyzing under the umbrella of different treatment of similarly situated persons." *Id.*

Johnson did not attempt to make a showing of disparate treatment regarding any available classes of comparators. For example, one potential set of comparators includes minority employees that DaVita did not terminate after a patient allegedly assaulted the employee and labeled the employee racist. Another set of comparators would include minority employees who missed multiple day of work but that DaVita did not terminate; or minority employees who experienced patient conflict that DaVita did not terminate. Plaintiff states only that Defendant refers to other similar situations, but the situations are not sufficiently similar. *Id.*

Again, Plaintiff must make the prima facie case. In considering potential sets of comparators, Plaintiff "cannot establish that others were [not] dismissed under similar circumstances." *Id.* at 323. Johnson fails to cite material in the record indicating that DaVita treated similarly situated African-American employees differently. She therefore cannot make a prima facie showing of discrimination.

Without a citation to legal authority, Plaintiff asks the Court to ignore the requirement that a plaintiff complaining of discriminatory termination make a prima facie showing. *Id.* Absent an exception, the Court will not ignore well-settled requirements of employment discrimination law.

II.     <u>Elliot Larsen Civil Rights Act[5]</u>

Michigan law treats the disparate-treatment prong of *McDonnell Douglas* in the same way as federal law. *See Thompson*, 410 F. App'x at 932. For the reasons stated above, Plaintiff failed to make her prima facie showing, which requires entry of judgment against her. *Mich. Dep't of Civil Rights ex rel. Burnside v. Fashion Bug of Detroit*, 473 Mich. 863, 863 (2005) (reversing appellate court and requiring entry of judgment in favor of employer because plaintiff failed to demonstrate that she was treated differently than a similarly situated, comparable employee).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment [22] is **GRANTED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 14, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 14, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager

---

[5] Plaintiff pled that diversity jurisdiction existed. *See* ECF 1, PgID 2, 49. The Court, therefore, possesses original jurisdiction over Plaintiff's ELCRA claim.